UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ALLIED ERECTING AND** | ) | **CASE NO.  4:08CV589** |
| **DISMANTLING CO., INC.,** *et al.*, | ) | |
| | ) | |
| PLAINTIFFS, | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **GENESIS EQUIPMENT &** | ) | **ORDER** |
| **MANUFACTURING, INC.,** *et al.*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

The instant matter is before the Court upon Defendants' Motion to Stay Proceedings Pending *Inter Partes* Reexamination.  (Dkt. # 51).  Plaintiffs have filed a Response in Opposition to the Motion, and Defendants have filed a Reply.  (Dkt. # 54, 55).  Additionally, Defendants have filed a Supplemental Memorandum and Plaintiffs have filed a Reply to the Supplemental Memorandum.  (Dkt. # 58, 59).

**I. BACKGROUND**

The Complaint in the instant matter was filed on March 7, 2008, and alleged that Defendants were infringing upon a patent owned by Plaintiff John Ramun and licensed to Plaintiff Allied Gator, Inc.  (Dkt. # 1).  The patent-in-suit, United States Patent No. 7,121,489, ("the '489 patent"), relates to a tool attachment system used in demolition equipment.  Plaintiffs' Complaint sought injunctive relief, compensatory damages, punitive damages, and attorneys' fees.  (Dkt. # 1 at ¶¶ A-F).

1

Following a Markman hearing on November 2, 2009, the Court entered a claim construction Order, adopting Plaintiffs' construction of the disputed claim terms, on January 20, 2010. (Dkt. # 37). On January 29, 2010, citing the demands of the parties' preparation for trial in the related trade secrets case before this Court, Allied Erecting & Dismantling Co., Inc., *et al.* v. Genesis Equipment & Manufacturing, Inc., *et al.*, Case No. 4:06CV114, Defendants filed a Motion to Stay Proceedings pending the completion of the trade secrets trial. (Dkt. # 37). While that Motion was pending, Defendants filed a Motion for Reconsideration of the Court's claim construction Order. (Dkt. # 40). The Court denied both Motions, but extended the deadline for discovery by approximately four months. (Dkt. # 42, 50). The parties have since filed three stipulated discovery schedules, which have been approved by the Court, the most recent of which has extended the deadline for fact discovery to October 18, 2010. (Dkt. # 44, 45, 56, 57, 63, 64).

Defendants filed the instant Motion to Stay Proceedings Pending *Inter Partes* Reexamination on May 13, 2010. (Dkt. # 51). During the pendency of the Motion, the United States Patent and Trademark Office ("PTO") granted Defendants' request for reexamination on Claims 1-19. (Dkt. # 59-1). The PTO also issued an Office Action in which the examiner confirmed Claims 3 and 9 of the '489 patent, rejected Claims 1, 2, 4, 6-8, 10, and 12-19 as being anticipated by prior art, rejected Claims 1, 2, 4-8, and 10-19 as being unpatentable based upon prior art, and declined to adopt 24 of Defendants' proposed rejections. (Dkt. # 59-1).

2

**II. LAW AND ANALYSIS**

The Court's authority to order a stay of proceedings pending the outcome of a reexamination of patents-in-suit by the PTO is part of the Court's inherent power to manage its docket. Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir. 1983); Landis v. North American Co., 299 U.S. 248, 254 (1936).  In determining whether to grant such a stay, courts commonly consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."  Xerox Corp. v. 3Com Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999) (citations omitted).  The Court will address each factor as it relates to the instant matters.

### A. Prejudice to the Non-Moving Party

Plaintiffs argue that they would be prejudiced by a stay of proceedings in several respects.  First, they argue that the full reexamination process, including appeals could take several years to complete.  Second, Plaintiffs contend that the delay in litigation will allow Defendants to continue to make and sell the allegedly infringing product, noting particularly that the '489 patent is set to expire in 2020, after which time Plaintiffs can no longer exclude others from using the patented technology.  According to Plaintiffs, monetary damages cannot fully compensate for the lost exclusivity provided by the patent.  Finally, Plaintiffs assert that if a stay were granted, evidence may be lost, witnesses may die or relocate, or their memories may fade.

Plaintiffs also contend that the filing of the reexamination request shortly after an unfavorable claim construction ruling indicates that Defendants are attempting to use the reexamination process to gain a tactical advantage.  They argue that Defendants are seeking a stay to stave off a final determination as to Plaintiffs' infringement claims.  Plaintiffs therefore assert that because Defendants waited over two years from the filing of the instant matter before requesting reexamination of the patent, their request for a stay should be denied as a dilatory tactic.

Defendants counter that Plaintiffs' claim of potential prejudice is undercut by Plaintiffs' failure to move for a preliminary injunction in the two years the instant matter has been pending, or to actively litigate the case until the Court directed them to do so after the case had been pending for one year.  Additionally, Defendants argue that the timing of their reexamination request does not indicate a dilatory motive, but was instead reasonable based upon the prohibition against the filing of serial requests with the PTO.  Thus, according to Defendants, they could not file a comprehensive reexamination request until they were able to consider the Court's claim construction Order to determine the full scope of relevant prior art.

The Court is not particularly persuaded by any of the parties' arguments as to this factor.  While some prejudice to Plaintiffs is inherent in any delay, this alone is not sufficient to prevent a stay.  If it were, few if any patent cases would be stayed pending reexamination by the PTO.  That is clearly not the case.  Moreover, Plaintiffs have to this point moved with little urgency in prosecuting the instant matter.  Indeed, they have not sought a preliminary injunction, did not actively litigate the instant matter for almost a

4

year after the initial pleadings were filed, and have sought or at least acquiesced in three extensions of the discovery schedule, (Dkt. # 39, 56, 63). Additionally, while Plaintiffs state generally that "evidence is likely to be lost, and witnesses may die or relocate, or their memories may fade," (Dkt. # 54 at 7), there is nothing to indicate that this is particularly likely in the instant matter, or that it is more of a concern here than in any other case.

Similarly, the Court is not fully convinced that Defendants are acting wholly without regard to a tactical delay in seeking reexamination of the patent. While it may have been helpful to consider the Court's claim construction Order before submitting the request to the PTO, Defendants likely could have made such request at an earlier time, especially considering the small practical effect that the Court's claim construction has upon the PTO's reexamination process. Nevertheless, Defendants undoubtedly have a valid reason for their reexamination request, the timing of which is not so unusual or suspect as to weigh heavily against them.

Accordingly, this factor weighs neither greatly in favor of nor against a stay.

### B. Simplifying the Issues in Question

Plaintiffs argue that PTO reexamination will not significantly simplify the issues for trial in the instant matter because it is likely that at the conclusion of the reexamination process, "the parties will be right back before the Court to continue with the infringement proceeding." (Dkt. # 54 at 9). They add that the Court's familiarity with the relevant technology obviates the need for PTO simplification of the issues.

Finally, Plaintiffs argue that the estoppel effects of the reexamination are limited because they do not apply to challenges based upon grounds other than printed prior art.

Defendants argue that PTO reexamination will substantially simplify the issues for trial. They first point to the estoppel effects of reexamination, particularly with respect to conclusions regarding prior art. Defendants also assert that any claims that survive reexamination are likely to be amended, which would reshape the issues and may eliminate the need for litigation on at least some of the claims.

The Court finds that this factor weighs substantially in favor of a stay. "When a claim is cancelled as a result of reexamination, there is no need to try the issue, thus simplifying litigation. When claims survive reexamination, the expert view of the PTO can assist the court in determining patent validity, thus simplifying trial." 01 Communique Laboratory, Inc. v. Citrix Systems, Inc., 2008 WL 696888, *2 (N.D. Ohio 2008) (citations omitted). As courts in the Sixth Circuit have noted, it is statistically unlikely that, where multiple claims are involved, all of the claims presented will survive reexamination unchanged. Id.; see also NetJumper Software, LLC, v. Google, Inc., 2008 WL 2761022, *2 (E.D. Mich. 2008) (noting that "three quarters of the cases which have been reexamined by the Patent Office have resulted in some change in the status of the challenged patents.").

In the instant matter, the PTO has already issued an initial determination confirming two of the patent claims and rejecting 17 claims as either unpatentable or anticipated, or both, based upon prior art. (Dkt. # 59-1). While both parties will now have an opportunity to argue the merits of that determination before the PTO, it appears

6

likely that the '489 patent will look considerably different at the conclusion of the reexamination process. Thus, there is a substantial possibility that a stay pending reexamination will simplify the issues in the instant matters and avoid unnecessary litigation and use of judicial resources.

### C. Stage of Litigation

While the instant matter is not at its earliest stages, it has not advanced to a point which warrants denying Defendants' Motions to Stay. Defendants filed the instant Motion two months prior to the date set for the close of fact discovery, which has since been extended by stipulation of the parties and is now more than two months from the date of this Order. Expert discovery has not yet commenced. Although claim construction has been completed, no trial date has been set. Therefore, when balanced against the potential benefits of a stay pending the conclusion of PTO reexamination, the present stage of the instant litigation does not warrant a denial of Defendants' Motion to Stay Proceedings. See NetJumper, 2008 WL 2761022 at *1 (granting a motion to stay proceedings filed two months prior to trial); 01 Communique, 2008 WL 696888 at *1 (granting stay after the close of discovery); Tdata v. Aircraft Technical Publishers, 2008 WL 77741, *2 (S.D. Ohio 2008) (granting stay five years after case was filed, after Markman decision had been issued, and just before discovery closed).

This factor weighs in favor of a stay.

### III. CONCLUSION

For the foregoing reasons, the Court finds that a stay of proceedings is appropriate pending the conclusion of the PTO reexamination of the patent-in-suit. Accordingly, the

Court hereby **GRANTS** Defendants' Motion to Stay Proceedings Pending *Inter Partes* Reexamination.  (Dkt. # 51).

The above-captioned matters are hereby stayed pending the conclusion of the PTO reexamination of the '489 patent.  Defendants shall inform the Court upon the conclusion of the reexamination process.

**IT IS SO ORDERED.**

<u>**/s/ Peter C. Economus – August 16, 2010**</u>
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**